COVENANT.

Case 152.

## Savage *vs* Carter.

APPEAL FROM THE GREENUP CIRCUIT.

*Accord and satisfaction.    Estoppel.*

[THIS is an action of covenant brought by William G. Carter against P. M. Savage, on the following article of agreement:

"This agreement, made this 11th day of April, 1834, by and between Pleasant M. Savage, of Lewis county, Kentucky, of the first part, and William G. Carter, of Greenup county, Kentucky, of the second part. Whereas, Richard Dearing, Alfred G. Carter and said Pleasant M. Savage were partners in the erection and carrying on

the saw mill and machinery, at the place in Lewis county known by the name of Rockport. And whereas, an execution issued against the said partners, against whom judgment had been rendered, which execution is in favor of William L. Graham, beaiing date the 21st of February, 1834, returnable on the third Wednesday in April next ensuing the date of said execution, for the sum of two thousand two hundred and sixty-six dollars and ninety-three cents in damages, and $10 31 cents costs; which execution is credited, by endorsement on the back thereof, with $22 77, made on execution to February, 1834. And whereas said execution has come to the hands of the deputy sheriff of Lewis county, and is levied upon the property of the said Savage, and not upon the property of the other defendants therein. And whereas the said Dearing and A. G. Carter are now both absent from Lewis county and not present to join in replevying said debt, which the said Savage is desirous shall be done; now the said Savage and W. G. Carter agree, that said Savage shall settle and satisfy the proportion of said debt for which, as partner, he is liable, which interest is equal to one-fourth of the whole amount, and after that one-fourth is paid, then the said W. G. Carter agrees to become his surety for one, in the replevy bond, to be given to secure the residue, and satisfy the said execution; and it is agreed farther, that when execution shall issue on said replevy bond, or before that time, if the parties or either of them shall choose so to do, the said William G. Carter shall and will pay, for and on account of his brother, A. G. Carter, the one-half of the whole amount of the said debt originally being the due proportion which the said Alfred ought to pay agreeably to the articles of partnership, and also two-thirds of the remaining fourth of the whole of said debt, said fourth being the proportion due by said Dearing, agreeably to said partnership. In consideration of which the said Savage agrees to pay the other one-third of said Dearing's proportion of the whole of said debt, when or before execution shall issue on said replevy bond; and the said Savage farther agrees that he will immediately upon said debt being replevied, proceed, by the appropriate writ, to foreclose a mortgage.

which has been executed to him by said Dearing, to secure him for this and other liabilities of said Dearing; and that he will, so far as the said Carter, as security as aforesaid, or his brother, the said Alfred G. Carter, shall have paid the said proportion of two-thirds so due by the said Dearing, he, the said William G., shall have the control over such decree as may be rendered, foreclosing said mortgage, to the full extent of the moneys so paid by them, or either of them, on account of said Dearing's one-fourth of said debt. And the said William G. shall have the right to collect and receive that amount upon said decree; and in case said William G. Carter shall not so take control of said decree and collect said money, but the same shall come to the hands of said Savage, then he will pay the same over to the amount so paid by said Carter, or either of them as aforesaid, on account of said Dearing's one-fourth part of said debt, to the said William G. Carter.

And it is further agreed that this agreement is in no wise to affect the right of said Alfred G. Carter, in settling the partnership concerns with said Dearing and Savage, who were his former partners in said Rockport property, except so far as under it either of the said partners or the said William G. Carter, for and on account of said Alfred, shall actually have paid money upon or on account of said execution or replevy bond, and which, if this agreement had never been made, would have been a good claim by the partner paying the same, or on whose account the same may have been paid by the said William G. as aforesaid. In witness whereof, the parties to these presents have hereto set their hands and seals, this day and date above written.        (Signed by the parties.)

Carter alledges that he has paid the debt in the contract mentioned as due by Dearing for his part of the judgment, and by appropriate allegations, the failure of Savage to sue on the mortgage and give the benefit of the decree of foreclosure to Carter, to an extent sufficient to indemnify him for the payment so made for Dearing or to give Carter the control of so much of the decree in that case as would indemnify him, Carter. Savage replies in substance, that after the making of the contract

sued on, Carter had, by purchase, become the owner of the equity of redemption in the mortgaged property mentioned in Dearing's mortgage to him; and in a replication to another plea, avers, that since the making of the contract sued on, he had, at the instance and request of Carter, released to him his right and claim under the mortgage; all which is, however, denied by Carter. The case was submitted by the parties, to the Circuit Judge, upon the law and the facts, to be by him decided, without the intervention of a jury; and judgment was rendered for the plaintiff for $   , being the entire amount of two-thirds of one-fourth of the debt to Graham, which Savage now seeks to reverse.            REPORTER.

JUDGE MARSHALL delivered the Opinion of the Court.

THERE is evidence in this case, both direct and circumstantial, conducing to prove that after the date of the covenant sued on, and about the time that William G. Carter made the contract with John D. Carter and Wm. R. Dearing, for the purchase of Richard Dearing's interest in the Rockport establishment, and in furtherance of that contract, an arrangement was made between Savage and Wm. G. Carter, by which, in consideration of Carter's agreeing to pay Dearing's fourth part of the Graham debt, which he bound himself in said contract with J. D. Carter and Wm. R. Dearing to pay, Savage agreed to release, and did actually release or transfer to him all the interest in Richard Dearing's fourth part of said Rockport establishment, which he, Savage, held under a mortgage from Dearing, indemnifying him against his liability for the Graham debt and other liabilities. We are inclined to the opinion that the effect of such an arrangement, if actually consummated, was to extinguish Savage's liability under the covenant sued on, to reimburse Carter for his payment of two-thirds of Dearing's portion of the Graham debt, which, by his part of that covenant he agreed to pay, in consideration of Savage's agreement to prosecute his mortgage against Dearing and reimburse him, or let him reimburse himself out of the proceeds. This would certainly be the effect of the arrangement, if, as is probable, the mortgage released or transferred was

S. covenants with C. to foreclose a mortgage he held on D. and give to C. the benefit of that decree. The interest of D. as mortgagor, is sold under execution, and afterwards C. becomes the owner thereof, to whom S. relinquishes his interest as mortgagee, this extinguishes the liability of S. on the covenant to C.

the same mortgage referred to in the covenant, as in that case Carter would have taken into his own hands, or at least would have deprived Savage of the means of performing his part of the covenant; and even if the other mortgage which Savage held, securing the same indemnity, or if both mortgages were alluded to, still the subsequent undertaking of Carter upon a consideration passing directly from Savage to himself, and in pursuance of his stipulation in his contract, for the purchase of Dearing's fourth, to pay the whole of Dearing's debt chargable on that fourth, might well be understood as a waiver of the original covenant, and a substitution of this new arrangement in its place; and in either aspect, the transaction might amount to an accord and satisfaction, such as was pleaded in bar of the action.

But as the direct evidence in regard to the actual consummation of such an arrangement, is contradictory and by no means conclusive in support of the affirmative, and as there are several circumstances in the conduct of both parties, apparently inconsistent with their respective rights and duties under such arrangement, and indeed inexplicable upon the facts now appearing, whether there was such an arrangement or not; and as, moreover, there is another ground on which the judgment must be reversed and the cause remanded for a new trial, we do not feel called upon to decide whether the evidence preponderates for or against the existance of such an arrangement; but conceding that no such arrangement was consummated, proceed to consider the legal effect of the purchase by Carter of R. Dearing's interest in the Rockport establishment, and of his stipulation with the vendors as a part consideration and condition of that purchase, to pay the whole of Dearing's portion of the Graham debt.

If this purchase was effectual, and to the extent that it was effectual we think it clear that Wm. G. Carter thereby substituted himself in the place of R. Dearing, not only in regard to his interest in the Rockport establishment, which was mortgaged to Savage as an indemnity to him for any payments he might make for Dearing on account of the Graham debt, but also in regard to that

debt itself, so far as it was Dearing's.   In consideration
of R. Dearing's interest in the establishment, he became
bound to pay R. Dearing's debt.   His subsequent pay-
ment of the debt then would not enure to the benefit of
Savage, so as to give him a right to proceed against Dear-
ing, on this or any other mortgage for indemnity, and
Savage's covenant only bound him to proceed on his
mortgage and remunerate Carter out of the proceeds.
But Carter's payment of the Graham debt would, under
this purchase, enure to the discharge of Dearing's, that
is, Carter's own interest from liability under the mort-
gage; and Carter being, moreover, the holder of the
equity of redemption by his purchase, any proceeding
on the mortgage must have been a proceeding against
him and his land.   And it would be absurd to say that
Savage was bound under the penalty of incurring liability
to heavy damages, to proceed against Carter, to sell Car-
ter's land in order to remunerate him for what he had
paid, either in purchasing it or relieving it from a burden
which Savage was under no obligation to remove, but
which rested on it only for the benefit of Savage or of
Carter.   It would be scarcely less absurd to say, that Sav-
age was bound to sell any other land belonging to Dear-
ing, for the purpose of remunerating Carter for a pay-
ment made in relief of this land, when the relief accrued
to his own benefit, and the payment was made in pur-
suance of his contract for the purchase of the same land,
and under a direct stipulation, founded on sufficient con-
sideration.   On all these grounds, we are of opinion that
the purchase by Carter of Dearing's interest, on the con-
dition of paying his portion of the Graham debt, must,
if effectual, be regarded as a complete extinguishment of
Savage's obligation under the covenant sued on, so far as
it related to Dearing's interest in the land, or to his por-
tion of the Graham debt.   For the same reasons, the
purchase must have had a like effect to the extent that it
was effectual in securing to Carter the interest of R. Dear-
ing, which he expected to acquire by the purchase.   And
it is by no means clear that the entire obligation of Sav-
age was not extinguished by operation of the contract of
purchase, made with his privity and consent, and com-

plied with on the part of Carter, even though that contract might, to some extent, have proved ineffectual to secure to Carter a part of the interest which he expected and intended to acquire. The transaction would seem to import this much upon its face, and to be, *prima facie*, entitled to this effect in law. And if this *prima facie* effect should, under any circumstances, and to any extent be impaired, because the contract of purchase may, in consequence of extraneous facts, have proved ultimately inefficacious to secure to Carter the entire benefit expected from it, it would seem not unreasonable to say that if such partial failure of the purchase was the consequence of Carter's own neglect or fault, he could not avail himself thereof to any extent, and therefore, that in the contest between him and savage, such partial failure, thus produced, should not be considered as at all impairing the *prima facie* legal effect of the contract of purchase, and the stipulation thereon for payment of this debt by Carter, but that the cause of action for the breach of covenant now alledged should be regarded as thereby entirely extinguished. And there are not wanting plausible reasons for the conclusion that even if, though the partial failure of the purchase should not have arisen from the fault or negligence of Carter, he would still have no cause of action upon this covenant of Savage on account of payments made under the contract of purchase, but that he must seek his indemnity either against the parties to the contract of purchase, or if Savage had produced the loss by any act in violation of his relations to the subject or the parties, by a proceeding against him, founded on such violation, and not upon this covenant, or by a proceeding in equity against all parties concerned, in which the rights and acts of all might be duly regarded.

Argument to show that if any recovery could be had, the judgment was for too much.

There is no doubt, upon the evidence, that Carter's purchase was completely effectual to the extent of one half of Dearing's interest, which was held by John D. Carter, and by him conveyed to Wm. G. Carter, whose payment of the Graham debt completely relieved it from the burden of the mortgage to Savage, the other debts for which it was liable being otherwise satisfied as appears. It follows, that for so much of Carter's payment as was

made on account of one half of Dearing's portion of the
Graham debt, he could not recover; that is, he could, at ·the utmost, recover only one half of the two-thirds of that debt which he had cevenanted with Savage to pay, and for which payment Savage had promised him an indemnity or remuneration out of his mortgage, because he could not have been allowed to refer more than that portion of his payment to this covenant. The judgment was, in fact, rendered for the entire amount of two-thirds of Dearing's portion of the Graham debt, with interest thereon, and was, therefore, for at least twice as much as Carter had a right to recover in this action. On this ground the judgment must be reversed.

Upon the question whether Carter is entitled to recover at all, upon the evidence now before us, it is unnecessary to decide, because we could not now give a final judgment, either for or against him, and upon another trial additional evidence may be adduced, giving a new aspect to the case, or at least elucidating facts which are now obscure, and establishing inferences which are now but conjectural. It may be remarked, however, by way of applying the principles already laid down, that if, at the time when Wm. G. Carter, through his agent, T. N. Davis, made the contract for the purchase of R. Dearing's interest from J. D. Carter and Wm. R. Dearing, which interest was an equity of redemption in one-fourth of 36½ acres, including the Rockport mills, Savage's execution against Richard and Wm. R. Dearing was in the hands of the sheriff, thus giving a lien on Wm. R. Dearing's interest of one-eighth, and this fact was known to the parties; and if, in consequence, more than $200 of the money which Wm. G. Carter, or his agent, Davis, was to pay to Wm. R. Dearing for his interest, was retained, by agreement, to be applied to that execution, and was not so applied nor ever paid over to Wm. R. Dearing, or if ever, not until after the sale of his interest under said execution, Savage, with a knowledge of the facts, might well levy the execution on Wm. R. Dearing's interest, for the purpose of coercing payment from them of the amount so retained, and it was the duty of said Wm. G. Carter, or his agent, Davis, to have bid for

Wm. R. Dearing's interest at said sale, to the amount of the money so retained; and if at said sale the said interest might have been purchased in by them for said amount or less, and they failed to do it, and it was.in consequence of this failure that the purchase by Wm. G. Carter of Wm. R. Dearing's interest proved ineffectual to secure that interest to him, the inefficacy of said purchase thus occasioned, imposed no burthen or duty upon Savage, and did not give or save a right of action against him on the covenant now sued on. And further, that even if the inefficacy of the intended purchase of Wm. R. Dearing's interest, whether partial or entire, was not occasioned by the fault or neglect of Wm. G. Carter or his agent, Carter still cannot recover in this action more than one half of two-thirds of Dearing's portion of the Graham debt; and if the title to Wm. R. Dearing's interest, which passed by the sale under Savage's execution, has been united to that of Wm. G. Carter, or is held in trust for him or his alienee, he cannot recover more than he has, in good faith paid or lost, as the price of so uniting the titles, deducting therefrom so much of the sum payable by him to Wm. R. Dearing for said interest as he has not, in good faith, paid to said Dearing or his assignee. The facts now appearing do not seem to require any further expression of opinion on the law of the case, which may be varied by the facts as they may hereafter appear. And we need say nothing of the equitable rights or remedies which may have resulted under the different circumstances which may have occurred.

Wherefore, the judgment is reversed and the cause remanded for a new trial.

*Owsley & Goodloe and Hord and Apperson* for plaintiff; *Morehead & Reed and Payne & Waller* for defendant.